NO. 07-06-0491-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

MAY 2, 2008
_____

VICTORIA HARRIS,

Appellant

v.

THE STATE OF TEXAS,

Appellee

_____

FROM THE 137TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2005-408,588; HON. CECIL G. PURYEAR, PRESIDING
_____

*Memorandum Opinion*
_____

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Victoria Harris challenges her conviction of capital murder by claiming that the trial court erred in allowing the jury to hear character evidence of the deceased during the guilt/innocence phase.[1]  We affirm the judgment.

_____

[1]To the extent that appellant complains of error in allowing sobbing family members to remain in the presence of the jury, the record does not reflect that such occurred and no mention of it was made during trial by appellant.  TEX. R. APP. P. 33.1(a) (to preserve a complaint for appellate review, the complaint must have been made to the trial court by a timely request, objection or motion). To the extent that appellant also raised a complaint with respect to evidence of Garcia's children and grandchildren, she did not object at the time that such evidence was first tendered. *Ranson v. State,* 707 S.W.2d 96, 99 (Tex. Crim. App. 1986) (a timely

Appellant assisted her boyfriend, Raymond Jackson, and her twelve-year-old cousin in robbing three convenience stores on the night of August 3, 2004, by driving them in her grandmother's car. During the robbery of the second convenience store, Jackson shot and killed the store clerk, Patricia Garcia.

Assuming arguendo, that error occurred and it was preserved, we find it harmless. The erroneous admission of character evidence does not implicate constitutional rights. *Rodgers v. State,* 111 S.W.3d 236, 248 (Tex. App.–Texarkana 2003, no pet.). Therefore, we must determine whether any substantial right of appellant had been affected before reversal can occur; that is, we must decide whether there is fair assurance that the error did not influence the jury or had but a slight effect on the outcome. *Solomon v. State,* 49 S.W.3d 356, 365 (Tex. Crim. App. 2001).

Appellant testified at trial and admitted to having willingly participated in the robberies and disposing of the gun used to kill Garcia. The only contested issue involved her anticipation of any intent on the part of Jackson to cause the death of Garcia. Furthermore, she testified that 1) she did not know Garcia would be shot, 2) she did not know the gun Jackson carried was loaded, 3) it was not their intent to hurt anyone, and 4) she initially did not believe Jackson had shot anyone even though both Jackson and the minor told her he did. On the other hand, she disclosed that she was present in the car when Jackson stole the shotgun and another weapon from a truck, that Jackson took the gun to the robbery to scare the victims, and that someone might get hurt or killed when a

---

objection is required). Additionally, appellant purportedly complains of the failure of the trial court to admit evidence that methamphetamine was found in the deceased's purse. However, she fails to provide argument or authorities on that particular point, and it is therefore waived. *Lawton v. State,* 913 S.W.2d 542, 558 (Tex. Crim. App. 1995).

firearm is taken to a robbery. So too did she participate in the robbery of another store immediately after the shooting and enjoyed the proceeds garnered from the robberies.

In turn, Jackson testified that when he entered the store, Garcia screamed. At that point, the gun purportedly discharged accidentally as he turned to look at appellant's cousin. Yet, the videotape of the incident did not corroborate this; instead, it revealed that he faced the victim the entire time. So too did appellant's own comments contradict Jackson's story. According to appellant, Garcia was coming from an office when she saw the robbers and screamed, and because it appeared that she was reaching for an alarm, Jackson purportedly fired towards the door next to her. Furthermore, the shotgun was of the single-action variety; thus, Jackson had to manually pull back the trigger before it could fire. So, it reasonably could be deduced that sometime before Jackson discharged the weapon he intentionally engaged the hammer in preparation for firing the weapon. Jackson also admitted to ejecting the spent shell after the shooting and reloading the shotgun before engaging in the third robbery. His having just come from one robbery to conduct another, his hearing the store clerk scream, Garcia having been seen reaching for what appeared to be an alarm, his engaging the hammer of the weapon in preparation for discharging it, his shooting towards the door of the office from which the victim was emerging, his facing the victim as the gun fired, and his reloading the shotgun before proceeding to another robbery (rather than undertaking effort to help the person he "accidentally" shot) constitutes overwhelming evidence from which a rational factfinder could deduce, beyond reasonable doubt, that he intended to kill.

To the foregoing, we had appellant's willing participation in the robberies, her knowing that Jackson would use a shotgun to scare his victims, her knowing that someone

3

could be hurt or killed as a result of a shotgun being taken to a robbery, her decision to participate in the last robbery after being told of the shooting, and her aid in disposing of the weapon. This is overwhelming evidence upon which a rational jury could find beyond reasonable doubt that appellant conspired to commit a felony and anticipated that a death could result therefrom.

Moreover, while the State did briefly mention the testimony of Garcia's son in its closing argument, the character evidence did not relate to the intent to kill or appellant's knowledge about the gun, its discharge, her voluntary participation in all three armed robberies, or her assistance in the disposal of the murder weapon. We, therefore, find that the evidence had, at most, only a slight effect on the jury's verdict. Thus, the purported mistake was harmless.

Accordingly, the judgment is affirmed.


Brian Quinn
Chief Justice

Do not publish.

4